**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| TARA "Z" OLIVER, | : | Case No. C-1-02-421 |
| Plaintiff, | : | Judge Beckwith |
| vs. | : | (Magistrate Judge Hogan) |
| UNITED DAIRY FARMERS, *et al.*, | : | **DEFENDANTS' REPLY TO "PLAINTIFF'S MOTION AGAINST [DEFENDANTS'] SUMMARY JUDGMENT"** |
| Defendants. | : | |

## 1. THERE IS NO DISPUTE WITH RESPECT TO THE ESSENCE OF PLAINTIFF'S HOSTILE ENVIRONMENT CLAIM

Defendants understood the basis of Plaintiff's Complaint to be the alleged hostile environment to which she was subjected by former United Dairy Farmers, Inc. ("UDF") Store Manager Harold Spivey while Plaintiff was employed by UDF; *viz*:

> Upon starting work at new store on August 29, 2001, Mr. Spivey made offensive comments to myself [*i.e.*, Plaintiff]. On or about August 30, 2001 Mr. Spivey made or initiated physical contact with myself. On or about August 31, 2001 Mr. Spivey assaulted myself in front of customers. On or about September 8, 2001 Melinda Jackson was screaming at me about Mr. Spivey's sexual assaults on the women at the store. [*Sic*]
>
> On or about September 9, 2001 I recorded Mr. Spivey verbally assaulting me.

*See* Complaint [Doc. No. 3] at 1-2 of handwritten supplement to ¶ III of Complaint. Plaintiff went on to acknowledge in her Complaint that "[o]n or about September 11, 2001 [UDF Human Resources Director] Mr. [Alan] Lirtzman heard tape [that Plaintiff had made of Spivey's hostile comments] and told [Plaintiff] the situation would be addressed." [*Sic*] Id. at 2 of handwritten supplement. As Defendants pointed out in their Motion for Summary Judgment ("Defts.' Motion."), Spivey was terminated that same day. *See* Defendants' Motion [Doc. No. 29] at 4, Part E. Consequently, the EEOC dismissed the Charge of Discrimination Plaintiff filed,

concluding that UDF "to[ok] immediate and appropriate action to alleviate [Plaintiff's] blight once it was informed of the sexual harassment to which [she] was subject." Id. at 1, Part II.

In her Motion, Plaintiff does not contest any of the foregoing.[1] Rather, she appears to raise six contentions (labeled as "A" through "F") in the "Facts" section of her Motion [Doc. No. 31], each of which is separately addressed below.

**2. NONE OF PLAINTIFF'S SIX CONTENTIONS SUGGEST THAT HER RACE OR AN ALLEGED SEXUALLY HOSTILE ENVIRONMENT, HAD ANYTHING TO DO WITH HER TERMINATION**

*"A." Plaintiff claims that she was terminated on June 23, 2000 "without due process."* Plaintiff offers no factual support for this contention. In fact, Plaintiff was not terminated; she quit without notice. *See* Defendant's Motion [Doc. No. 29] at 2, Part III.A.. Regardless, there is nothing to indicate that her separation from UDF in June, 2000 was because of her race or any type of hostile environment that allegedly existed there at the time.

*"B." Plaintiff claims that she was moved from UDF Store 154 to UDF Store 69 in retaliation because District Supervisor Ron Ernst had to work on a shift that Plaintiff (allegedly) timely "called off" in advance.* Defendants pointed out in their Motion [Doc. No. 29] the reason for Plaintiff's transfer:

> UDF District Supervisor Ron Ernst checked Plaintiff's attendance for the time period between June 18 and July 26, 2001 and learned of the seventeen shifts she was scheduled to work, she did not show up for nine of them.

[1] Although she does make a reference that the First Assistant Manager of the UDF Store, Melinda Jackson, was aware of Spivey's conduct, Defendants pointed out in their Motion, and Jackson affirmed in her Affidavit that was filed in conjunction with Defendants' Motion, that when Jackson first learned of Spivey's actions she went to Spivey herself and told him to cease it, and thereafter when she learned he had not, she immediately reported him to higher management -- which led to Spivey's termination. *See generally* Defendants' Motion [Doc. No. 29] at 4, n. 2. Plaintiff did not contest these facts in her Motion [Doc. No. 31].

Id. at 3, Part III.B.. Plaintiff did not contest those facts in her Motion [Doc. No. 29]. Again, regardless, Plaintiff still offers no evidence that her transfer, for whatever reason, had anything to do with her race or any alleged hostile environment.

"C." *Plaintiff claims her transfer violated the "due process" to which she was entitled, because neither the Store Manger nor the Assistant Store Manager came in to work the shift Plaintiff missed -- and it "is the management's responsibility to step up when all else fails."* Even if this is true, again, there is nothing here to indicate Plaintiff's race or any allegedly sexually hostile environment had anything to do with her transfer.

"D." *Plaintiff claims that Melinda Jackson was aware of Spivey's conduct and failed to take action."* Plaintiff offers no facts to support this contention. In fact, as alluded to *supra*, the record facts show that not only did Jackson take prompt action when Spivey's conduct was initially brought to her attention (which resulted in his refraining from doing it), but that when it subsequently was reported to her that his conduct had recurred, her actions in going to higher management prompted the investigation that led to Spivey's immediate discharge. *See* n. 1, *supra* at 2.

"E." *Plaintiff claims Spivey was accorded unequal treatment because he was not afforded the same "representation" as Darlene Marler.* With respect to this contention, Plaintiff earlier pointed out in her Motion [Doc. No. 31] (*i.e.,* Part II, "Statement of Case") that "Mr. Spivey was terminated and not afforded representation by Defendants' counsel (Jerry Sallee) yet Darlene Marler has been terminated for theft and he (Jerry Sallee) is currently representing Ms. Marler." Plaintiff is mixing apples and oranges. Yes, Marler subsequently was terminated from UDF for theft, and if that was what this case was about, UDF (or its counsel) would not be representing her -- just as it is not representing Spivey. Again, this had absolutely nothing to do

with race or an allegedly sexually hostile environment.[2]

*"F." Plaintiff claims her request to UDF's Payroll Department for leave of absence forms were sent to the wrong address.* Apparently, the purpose of this contention is Plaintiff's explanation for failing to show up for work (*i.e.*, after Spivey's termination), that ultimately led to her termination. *See* Defendants' Motion [Doc. No. 29] at Part III.F. *Cf.* EEOC Determination: "[UDF's] decision to terminate [Plaintiff's] employment was based on [her] missing two consecutive days of work without calling into [her] job." Id. at 1, Part II. Significantly, Plaintiff does not contest that she failed to report to work, or that she did not file any leave of absence forms, prior to her termination from UDF. And, once again, even if there had been some error on UDF's part in being unaware of Plaintiff's attempt to obtain a leave of absence (*see* id. at 5, n. 3), there is nothing to indicate her race or an allegedly sexually hostile environment had anything to do with the decision to terminate her.[3]

### 3. CONCLUSION

Plaintiff may feel that she was treated unfairly (*i.e.*, that District Supervisor Ernst "took it out on her" when he had to work a shift for which Plaintiff had "call off"), or that an error had been made by UDF in terminating her because she didn't show up for work when she was trying to obtain a leave of absence. Even if Plaintiff were correct in either regard, though, there still is no evidence that UDF failed to act appropriately with respect to her claim of a sexually hostile

---

[2] Plaintiff also insinuates in her Motion [Doc. No. 31] that UDF's counsel (Sallee) is "guarding" or protecting Marler from being deposed, and that when Plaintiff requested her deposition, Sallee stated he could not locate Marler. That is incorrect. On the day Plaintiff requested to take depositions, Sallee was able to make Defendants Lirtzman, Ernst, and Jackson available because all were currently employed by UDF. Marler, because she previously had been terminated from UDF and was employed by another entity, was not available that day. Plaintiff was free to depose Marler on some other day, but never requested to do so.

[3] Plaintiff cannot claim retaliation. Indeed, UDF supported Plaintiff's complaints against Spivey -- that's why it terminated him.

environment, or that her termination was in any way related to her race or retaliatory in nature. Accordingly, Defendants Motion for Summary Judgment [Doc. No. 29] should be granted

Respectfully submitted,

s/

Jerry S. Sallee (0013303)
DINSMORE & SHOHL LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH 45202
(513) 977-8378 (phone)
(513) 977-8141 (fax)

Trial Attorney for Defendants

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Defendants' Reply to "Plaintiff's Motion Against [Defendants'] Summary Judgment" was served by regular United States mail on Plaintiff, Tara "Z" Oliver, 6750 Bramble Avenue #17, Cincinnati, Ohio 45227, this 5th day of September, 2003.

s/

Jerry S. Sallee (0013303)

938408.1