# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

TARA "Z" OLIVER,
      Plaintiff

    vs                             Case No. C-1-02-421
                                      (Beckwith, J.)

UNITED DAIRY FARMERS, et. al.,      (Hogan, M.J.)
      Defendants

---

## REPORT AND RECOMMENDATION

---

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 29), Plaintiff's "Motion Against Summary Judgment" (Doc. 31), Defendants' Reply to Plaintiff's Motion Against Summary Judgment (Doc. 34), and Plaintiff's Reply memorandum (Doc. 35).

Plaintiff filed her Complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. seq. (Title VII). The crux of Plaintiff's Complaint appears to be a hostile environment sexual harassment claim. Plaintiff also makes vague reference to claims for racial discrimination and retaliation.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant United Dairy Farmers ("UDF"), which was dismissed pursuant to the EEOC's finding that Defendant's decision to terminate Plaintiff was based on her absence from work for two consecutive days without calling into her manager. (*See* Doc. 29, Affidavit of Alan Lirtzman, ¶ 9; Ex. H, attached). The EEOC also determined that Defendant took "immediate and appropriate action to alleviate [Plaintiff's] blight once it was informed of the sexual harassment to which [she] was subject." (Id.). Thereafter, on March 1,

2002, the EEOC issued a right-to-sue letter to Plaintiff.  (Doc. 3, Complaint, Right-to-Sue Letter, attached).

## FACTS

Plaintiff was originally hired by UDF on March 11, 2000 to work at UDF's Store No. 154, located at 5654 Vine Street in Cincinnati, Ohio.  (Doc. 29, Affidavit of Darlene Marler, at ¶ 2, attached).  Plaintiff worked at that store location until June 23, 2000.  (Id. at ¶ 2).  It is disputed whether Plaintiff was terminated in June of 2000 (Doc. 3, Complaint) or whether she quit without notice (Doc. 29, Defendants' Motion for Summary Judgment). Plaintiff subsequently re-applied to work at Store 154, and on January 1, 2001, Store manager Darlene Marler re-hired Plaintiff to work there. (Id. at 3).

During the summer of 2001, Plaintiff was scheduled for only two to three days per week.  (Id. at ¶ 4).  Again, it is in dispute whether the reduction in hours was at Plaintiff's request or not.  According to Defendants, Plaintiff's attendance became an issue thereafter.  Plaintiff subsequently failed to appear for her assigned shifts on July 20, July 22 and July 26, 2001.  (Doc. 29, Ex. B, Lirtzman Aff., at ¶ 2; Marler Aff., at ¶ 4).  As a result of these absences, store manager Darlene Marler refused to continue to schedule Plaintiff to work.  (Marler Aff., at ¶ 4).  On July 31, 2001, Plaintiff called UDF Human Resources representative Paula Edwards and complained about Marler's refusal to schedule her to work.  (Doc. 29, Ex. A; Affidavit of Paula Edwards, ¶ 3, attached).  When Edwards asked Marler about the scheduling issue, she was informed of Plaintiff's attendance issues.  (Doc. 29, Ex. A; Edwards Aff., at ¶ 4; Marler Aff., at ¶5).  An investigation of Plaintiff's attendance for the time period between June 18, 2001 and July 26, 2001 indicated that Plaintiff worked only nine out of seventeen shifts for which she was scheduled.  (Doc. 29, Ex. A; Ex. B; Affidavit of Ron Ernst, at ¶ 2; Edwards Aff., at ¶ 5; Lirtzman Aff., at ¶2).  With respect to the remaining shifts for that period, Plaintiff's tardiness ranged from four minutes to three hours for every shift.  (Doc. 29, Ex. B; Lirtzman Aff., at ¶2).  Nonetheless, Plaintiff was not terminated at this time but rather, was offered a transfer to another store location. (Doc. 29, Ex. A; Edwards Aff., at ¶ 6; Ernst Aff., at ¶3)

On August 28, 2001, Plaintiff was transferred to Store No. 69, located at 3641 Montgomery Road in Cincinnati, Ohio.  (Ernst Aff., at ¶ 3).  This store was managed by Harold Spivey.  Thereafter, on September 10, 2001, UDF District Supervisor, Ron Ernst, received a complaint from the assistant manager of Store No. 69 that Spivey

was sexually harassing Plaintiff and another female employee. (Ernst Aff., at ¶ 4; Affidavit of Melinda Jackson, at ¶ 2). Ernst informed UDF Human Resources Manager, Alan Lirtzman, of the complaints. (Ernst Aff., at ¶4; Lirtzman Aff., at ¶3). On September 11, 2001, Lirtzman interviewed the employees at Store 69 including Spivey. During the course of these interviews, Lirtzman discovered that Plaintiff had tape recorded a verbal exchange between herself and Spivey wherein Spivey threatened physical harm to Plaintiff. (Lirtzman Aff., at ¶ 3). When Lirtzman questioned Spivey about the threat, Spivey denied making it. Lirtzman requested that Spivey's employment be terminated based upon his threatening conduct and his dishonesty regarding such. (Id.). UDF Zone Manager, Larry Hornsby was directed to terminate Spivey's employment and did so that day. (Id.).

After Spivey's termination, Plaintiff continued to work at Store No. 69 until September 24, 2001. However, after that date, she failed to report for her assigned shifts. (Doc. 29, Ex. E; Lirtzman Aff., at ¶ 4; Ernst Aff., at ¶ 6). Due to her failure to report for work or to notify her manager in advance of her absence, District Supervisor Ernst terminated Plaintiff on October 8, 2001. (Doc. 29, Ex. F; Ernst Aff., at ¶6; Lirtzman Aff., at ¶5). Plaintiff subsequently contacted Ernst on January 16, 2002, inquiring as to when she could return to work. (Ernst Aff., at ¶ 6, Lirtzman Aff., at ¶ 5). Lirtzman then contacted Plaintiff and informed her that her employment had been terminated the previous October. (Lirtzman Aff., at ¶5). Plaintiff informed Lirtzman that she was on a "leave of absence." (Lirtzman Aff., at ¶ 6). Apparently, in early October 2001, Plaintiff requested leave forms from UDF's Benefits Department but she did not file the forms with UDF until after she was terminated. Also, it appears that the forms which Plaintiff requested were mailed to an incorrect address resulting in a delay in Plaintiff's receipt of such. (Doc. 31, Ex. U, attached).

## OPINION

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323.

A party may move for summary judgment on the basis that the opposing party

3

will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law.  In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.  *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989).  Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgment motion.  *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990).  The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies.  *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.).  "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial.  *Anderson*, 477 U.S. at 249-50.  In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact.  *Karnes*, 912 F. Supp. at 283.  *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988).  The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted.  *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

<u>Summary Judgment Should be Granted With Respect to
Plaintiff's Sexual Harassment Hostile Environment Claim</u>

The primary focus of Plaintiff's Complaint appears to be that she was subjected

to hostile environment as a result of her supervisor, Harold Spivey's sexual harassment.

Title VII provides that "[i]t shall be unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against an individual with respect to his compensation, term, conditions, or privileges of employment, because of such individual's . . . sex. . . ." 42 U.S.C. § 2000e-2(a).

Courts recognize two types of sexual harassment claims. The first type, *quid pro quo* harassment, occurs when a supervisor demands sexual favors as a condition for job benefits, which may be non-economic as well as economic benefits. The second type, referred to as "hostile environment" sexual harassment occurs when the harassment creates a hostile or abusive working environment. *See Kauffman v. Allied Signal Inc., Autolite Div.*, 970 F.2d 178, 182 (6th Cir. 1992), *cert. denied*, 506 U.S. 1041 (1992); *Fleenor v. Hewitt Soap Co.*, 1995 WL 386793, at * 2 (S.D. Ohio Dec. 21, 1994)(Rice, J.), *aff'd*, 81 F.3d 48 (1996). Under a hostile environment theory, liability for sexual harassment may be imposed even where there is no direct solicitation for sexual favors from the plaintiff. *Id.* In this case, Plaintiff has raised only a hostile environment sexual harassment claim.

The elements of a hostile environment sexual harassment claim are set forth in *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986), and further refined in *Harris v. Forklift Systems*, 510 U.S. 17 (1993). *See also Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998). In order to recover on a hostile environment claim, Plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment had the effect of unreasonably interfering with Plaintiff's work performance and created a working environment that was intimidating, hostile, or offensive; and (5) a basis for employer liability exists. *Fleenor v. Hewitt Soap Co.*, 81 F.3d 48 (6th Cir. 1996), *cert. denied*, 117 S. Ct. 170 (1996). Assuming, as Defendants do for purposes of summary judgment only, that Plaintiff has satisfied the first four elements, Plaintiff's argument fails with respect to the fifth element.

"An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765

(1998). However, the key to the employer's liability is whether it took prompt and appropriate corrective action. *Crossman v. Parker Hannifin Corp.,* No. 97-3252, 1997 WL 778115 at *2 (6th Cir. Dec. 11, 1997).[1] Employer liability "can be negated if the employer responds adequately and effectively once it has notice of the actions." *Kauffman,* 970 F.2d at 184.

In determining whether the employer instituted prompt and appropriate corrective action, the court must look at the circumstances at the time of the alleged harassment. *Blankenship*, 913 F. Supp. 1045, 1054 (S.D. Ohio Dec. 12, 1995). The effectiveness of the remedial action cannot be determined by hindsight; rather, it must be viewed in light of the circumstances that existed at the time the employer knew or should have known of the harassment and instituted corrective action. *Id.* The Court's inquiry should not be limited to the question of whether the alleged harasser refrained from engaging in identical conduct after the corrective action was implemented. Rather, the Court should consider whether, under the circumstances, the remedial action was calculated to halt the current harassment and to deter future harassment. *See Stacy v. Shoney's Inc.*, 955 F. Supp. 751, 756 (E.D. Ky. 1997)(defendant is liable if it did not respond adequately or effectively; effectiveness is measured not by the extent to which employer punishes or disciplines alleged harasser, but whether the harassment is halted); *Kilgore v. Thompson & Brock Mgmt, Inc.*, 93 F.3d 752, 754 (11th Cir. 1996)(after notice, employer must take prompt remedial action which is reasonably likely to prevent misconduct from recurring); *Knabe v. Boury Corp.*, 114 F.3d 407, 412 (3rd Cir. 1997)(in determining the adequacy of remedial action, the court must consider whether the action was reasonably calculated to prevent further harassment); *Yamaguchi v. United States Dep't of the Air Force*, 109 F. 3d 1475, 1482-83 (9th Cir. 1997)(employer's remedial action must be reasonably calculated to end current harassment and to deter future harassment and must include some disciplinary action against offending employee); *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 184 (6th Cir. 1992)(employer liability may result from a failure to respond effectively and adequately to the problem when the employer had notice of a supervisor's past sexual harassing behavior). When fashioning a remedy, an employer can be liable only if that remedy "exhibits such a degree of

---

[1] We agree with Defendants that, although *Crossman* was decided prior to the Supreme Court' s decisions in *Ellerth and Faragher*, this aspect of the employer liability remains unaffected by the Supreme Court's decision. *See Ellerth*, 524 U.S. 742, 765 (1998); *Faragher*, 524 U.S. 775, 807 (1998)(defense includes the necessary element of whether the employer exercised reasonable care to correct promptly any sexually harassing behavior).

indifference as to indicate an attitude of permissiveness that amounts to discrimination." *Blankenship,* 123 F.3d at 873.

In the case *sub judice*, Defendant UDF had a sexual harassment policy which expressly forbids the conduct complained of by Plaintiff. The policy defines sexual harassment and contains examples of specific conduct which will not be tolerated by management or non-management personnel. On September 8, 2001, Plaintiff first told Melinda Jackson about Spivey's alleged harassment. Thereafter, on September 10, 2001, Jackson informed Ron Ernst about Plaintiff's complaint of sexual harassment against Spivey. On September 11, 2001, Plaintiff was interviewed by management representatives and then those representatives met with Spivey. That afternoon, UDF terminated Spivey's employment. Following Spivey's termination, Plaintiff made no further complaints of sexual harassment. Plaintiff's claim that Jackson was aware of Spivey's conduct but failed to take action fails for the simple fact that Jackson reported the conduct to Ernst the day after Plaintiff complained. There is no evidence that Plaintiff complained of sexual harassment prior to September 8, 2001. Indeed, Plaintiff only began working with Spivey on August 28, 2001, two weeks prior to his termination. Thus, it is clear that Jackson took prompt action instigating the investigation which ultimately led to Spivey's discharge. In light of the fact that the corrective action taken by UDF ceased the alleged harassment by Spivey, we find that Defendant UDF is entitled to summary judgment with respect to Plaintiff's sexual harassment hostile environment claim.

<u>Summary Judgment Should Be Granted With Respect to
Plaintiff's Race Discrimination Claim</u>

Plaintiff's claim of race discrimination is amorphous at best. Plaintiff makes reference to race discrimination while never quite identifying a specific factual basis for such. With respect to Plaintiff's initial termination in June 2000, Plaintiff offers no evidence to establish that race played any part in Marler's decision to terminate her. Plaintiff makes vagues allegations of Marler's "misconduct" and problems with scheduling. With respect to Plaintiff's termination in October, 2001, Plaintiff has also failed to provide any evidence indicating that race played a part in her termination. The evidence shows that Plaintiff failed to show up for her assigned shifts in September, 2001 and was, therefore, terminated on October 8, 2001. Whether or not Plaintiff believed she was on a leave of absence is irrelevant as this still does not establish a discriminatory animus on the part of Defendant. Plaintiff has offered no evidence, other than her conclusory allegations, to rebut Defendant's legitimate

nondiscriminatory reason for her termination. *See* Fed. R. Civ. P. 56(d). These vague assertions do not meet Plaintiff's burden on summary judgment. Plaintiff is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial and Plaintiff has failed to do so. *Sixty Ivy Street Corp.*, 822 F.2d at 1435; *Harris*, 873 F.2d at 931 (6th Cir. 1989). As such, we find that Defendant UDF is entitled to summary judgment with respect to Plaintiff's race discrimination claim.

<u>Summary Judgment Should Be Granted With Respect to
Plaintiff's Retaliation Claim</u>

In order to establish a case of retaliation, Plaintiff must prove: (1) that she engaged in activity protected by Title VII, (2) that this exercise of her protected civil rights was known to Defendant, (3) that Defendant thereafter took an employment action adverse to Plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. *Canita v. Yellow Freight System, Inc.*, 903 F.2d 1064 (1990).

Plaintiff alleges that she was transferred from Store No. 154 to Store No. 69 in retaliation because the District Supervisor Ernst had to cover a shift which Plaintiff "untimely" called off three to four hours in advance. (Doc. 31, Motion Against Summary Judgment, at p.6). Defendants argue that Plaintiff was transferred because Marler no longer wished to have her work in her store due to Plaintiff's attendance problems. Attendance records showed that out of seventeen shifts for which Plaintiff was scheduled to work, she did not show up for nine of them. Nonetheless, rather than terminate Plaintiff, she was transferred to another store location. Regardless of the reason for her transfer, Plaintiff has presented the Court with no evidence showing that her transfer resulted from any discriminatory animus. Moreover, Plaintiff has provided no evidence that she engaged in protected activity prior to her transfer[2] or that her transfer constituted an adverse employment action. As such, we find that Plaintiff has failed to establish a prima facie case of retaliation and Defendant UDF is entitled to summary judgment with respect to Plaintiff's retaliation claim.

<u>Summary Judgment Should Be Granted in Favor of the Individual</u>

---

[2] Plaintiff filed a complaint with the EEOC on October 16, 2001 following her termination alleging race discrimination and sexual harassment. (Doc. 31, Ex. F).

<u>Defendants As There is No Individual Liability Under Title VII</u>

Plaintiff's Complaint also names Ron Ernst, Al Lirtzman, Darlene Marler and Melinda Jackson as Defendants in this action.

The Sixth Circuit has recently addressed the issue of individual liability under Title VII. In *Wathan v. General Electric Company,* 115 F.3d 400 (6ᵗʰ Cir. 1997), the Sixth Circuit examined the statutory scheme and remedial provisions of Title VII and concluded that Congress did not intend to provide for individual employee/supervisor liability under Title VII. *See Id.* at 405-06. The Sixth Circuit explained that it was inconceivable that Title VII, which limits liability to employers with fifteen or more employees, could simultaneously allow civil liability to run against individual employees. *See Id.* at 406. The Sixth Circuit further reasoned that Title VII's remedial provisions were incompatible with the imposition of liability on individual employees for violations of the Act. *See Id.* As the court noted, prior to 1991, a successful Title VII plaintiff was limited to reinstatement and back pay, remedies which are only available from the employer. When Congress enacted the Civil Rights Act of 1991, it added compensatory and punitive damages for intentional discrimination under Title VII, amounts which were calibrated to the size of the employer. *Id* at 406; *see also* 42 U.S.C. §1981a. The court reasoned that the absence of a provision for damages to be paid by individuals was further evidence of the lack of Congressional intent to hold individuals liable. *Id.* Thus, the Sixth Circuit held that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Id.* at 405.

The Second, Fifth, Seventh, Eighth, Ninth, Tenth, Eleventh, and D.C. Circuits have similarly held that Title VII does not impose liability on individual employees. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir. 1995); *E.E.O.C. v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1282 (7ᵗʰ Cir. 1995); *Lenhardt v. Basic Institute of Tech. Inc.,* 55 F.3d 377, 381 (8ᵗʰ Cir. 1995); *Smith v. Lomax,* 45 F.3d 402, 403 (11ᵗʰ Cir. 1995); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir.), *cert. denied*, (1995); *Grant v. Lone Star Co.,* 21 F.3d 649, 653 (5ᵗʰ Cir. 1994); *Miller v. Maxwell's Intern. Inc.,* 991 F.2d 583, 588 (9ᵗʰ Cir. 1993); *Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10ᵗʰ Cir. 1993). As Plaintiff has failed to establish that these individual defendants " otherwise qualify as an 'employer'" under Title VII, we conclude that the Individual Defendants may not be held personally liable under Title VII. Accordingly, the  Defendants Ron Ernst, Al Lirtzman, Darlene Marler and Melinda Jackson are entitled to summary judgment as a matter of law.

**IT IS THEREFORE RECOMMENDED THAT:**


1)    Defendants Motion for Summary Judgment (Doc. 29) be GRANTED for the
      reasons stated herein and this case be TERMINATED on the Court's Docket.



Date:    2/13/04              s/Timothy S. Hogan
                             Timothy S. Hogan
                             United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

_____

TARA "Z" OLIVER,
        Plaintiff


    vs                                       Case No. C-1-02-421
                                                 (Beckwith, J.)

UNITED DAIRY FARMERS, et. al.,        (Hogan, M.J.)
        Defendants

# NOTICE


       Attached hereto is the Report and Recommended decision of The Honorable Timothy S. Hogan, United States Magistrate Judge, which was filed on 2/13/2004. Any party may object to the Magistrate's findings, recommendations and report within ten (10) days after being served with a copy thereof or further appeal is waived. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also* Fed. R. Civ. P. 72(b). Such parties shall file with the Clerk of Court, and serve on all Parties, the Judge and the Magistrate, a written Motion to Review which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made along with a memorandum of law setting forth the basis for such objections. (Such parties shall file with the Clerk a transcript of the specific portions of any evidentiary proceedings to which an objection is made).

       In the event a party files a Motion to Review the Magistrate's Findings, Recommendations and Report, all other parties shall respond to said Motion to Review within ten (10) days after being served a copy thereof. *See* Fed. R. Civ. P. 72(b).

11